Allen, J.
The plaintiff sues for compensation alleged to be due for services as an attendant of the Marine Court of the city of Hew York, for the months of May, June, July and August, 1872. He was paid in part for the month of May, and his right to the small balance for that month is not very earnestly contested. The objection is to his claim for the residue of the period, the three succeeding months.
The plaintiff was appointed to the position of attendant in the Marine Court, pursuant to the provisions of chapter 582 of the Laws of 1870, and his compensation fixed by the board of supervisors of the county, at $1,200 per annum. By that act the court had power to appoint such and so many attendants as the board of supervisors should, from time to time, by resolution, authorize to be appointed. The number of “ assistants, stenographers, interpreters and attendants,” that might be appointed, was unlimited, save as the board of supervisors might control the discretion of the court. The case does not disclose the number of attendants in position under the act, during the time for which the plaintiff seeks to recover in this action. On the 29th of April, 1872, the legislature passed a general law, limiting the number, and regulating the appointment of the clerks, officers and attendants, in the several courts in the city of Hew York, including the Marine Court, and repealing all acts, and parts of acts, inconsistent with its provisions. (Laws of 1872, chap. 438.) The act was made to take effect immediately upon its passage. It was a public act, and the law presumes every person to have had knowledge of it, from the time it went into operation. Every person was bound to take notice of it. It superseded the law under which the plaintiff received his *168 appointment, and held his place. By the latter act , the judges of each of the courts named, including the Marine Court, were empowered to appoint four, officers for each part in the court, whose salaries should be fixed by the common council of the city, but such salary should in no case exceed $1,200 per annum. On the 31st of May, 1812, the judges of the Marine Court took action under the statute, and in the exercise of the power conferred, appointed twelve attendants, for parts one and two of the trial terms of the court, and for the Special Term for hearing of motions and issues of law, and resolved that “the appoiiitment of the attendants for the other parts, and such other assistants as the court is authorized by law to appoint, rest, until further rooms are assigned by authority for the use of the court.” All the attendants for which there was any necessity, or whose services could be made available, were appointed at that time, and the only attendants or servants of the court from that time, until others were appointed later in the year, were those then appointed. Aside from the legal effect of the action of the judges in making the appointments under the act - of 1812, as per se, terminating the service of those appointed under the repealed act of 1810, the necessary inference, from the proceedings and resolution of the judges, is, that they did not intend to continue in their service, as attendants, any except those then named and designated as such. It would be-preposterous to suppose that, because they did not, by resolution, or some other act equally significant, discharge the former employes they intended to continue in service, as well the former attendants as those designated and appointed. On the 31st of August, the judges appointed twelve other attendants, four for each of parts three and four, and four for chambers and General Term, and the clerk was directed to notify the comptroller of the action of the court in regard to the establishment of the various parts, the times and places assigned for their holding, and the appointment of the various clerks and officers. From the form of the order, it is inferable, that some of the “ parts ” may have then been *169 for the first time established. But this is not a very material fact.
The plaintiff was on the second day of September appointed in the place of one of those assigned to the chambers and General Term, and was paid for his services from that time. During the months for which the plaintiff claims to recover in this action, after May, there was no trial terms or General Term of the court held, and there would, therefore, seem to have been no occasion for the services of more than the twelve attendants appointed on the thirty-first of May.
The acts of 1870 and 1872 cannot both stand, but the former was repealed and ceased to exist as law, by the coming into operation of the latter, and when the courts named acted under the latter act; and appointed one or twenty attendants, the appointments and designations under the former act became and were a nullity. The authority under which they were made was taken away, and the rights of the incumbents to the emoluments and compensation ceased.
It is claimed, on behalf of the plaintiff, that his service did not terminate until he was formally removed from his place, and notified of such removal, or some one was appointed specifically in his place, and he notified of the appointment of such substitute. Whatever may be the rule as to officers holding at the pleasure of the appointing power, or subject to a power of-removal, the plaintiff cannot claim the benefit of it. He held his position, whatever its true character, under a statute which had- been repealed, and an authority that had been revoked, and neither a removal or a supersedeas by the appointment of another in his place, was necessary to terminate his employment. But the rule is not firmly established as claimed in behalf of the respondent, that as to the individual officeholder and his rights, a removal from office may not be complete without the formal service of a supersedeas or a notice of the removal. It has been held that so far as the public and third persons are concerned, the powers, duties and liabilities of a public officer do not necessarily absolutely determine upon the appointment of another in his *170 place. The rule as stated by Ch. J. Tilghman, in Bowerband v. Morris (Wall. C. C., 119), particularly applied to sheriffs and marshals, is that all persons who act by authority derived from others may proceed to execute business, until notice of the revocation of their authority, and their acts between the time of revocation of their power, and of their receiving notice of such revocation, are held good. (Boucher v. Wiseman, Cro. Eliz., 440 ; Fitz's Case, id., 12; Crew v. Vernon, Cro. Car., 97; Burch v. Maypowder, 1 Ver., 400; Westby’s Case, 3 Coke, 71.)
In The Matter of Hennen (13 Pet., 230), which involved the power of a court tó remove its clerk, and the effect of the act of removal, Judge Thompson says : “ The power vested in the court was a continuing power, and the mere appointing of a successor would, per se, be a removal of a prior incumbent, so far, at least, as his rights were concerned. How far, the rights of third persons may be affected, is unnecessary now to consider.”
To the same effect is Smyth v. Latham (9 Bing., 692); The People v. Carrique (2 Hill, 93), and Commonwealth v. Slipe (25 Penn. St., 23) merely involved the question whether a vacancy had been created at the time of the appointment of a particular officer, by the removal of- the person already in office, and there is but a “ semble ” in the dissenting opinion in Carriquds Case, as to the necessity of a notice to the officer removed or superseded. Public policy and justice to the superseded official may require that he shall not be treated as a trespasser, and that his acts shall be valid until he has notice that his authority has been revoked, but further than this, no case has, as yet, gone, so far as reported decisions have come under my notice.
But this principle has no application to this case. The plaintiff exercised no power affecting the public. He was merely the servant of the court, with no duties except to attend its sittings and do the biddings of the judges. There is no analogy between the position occupied by him and that of executive, administrative or judicial officers, charged with *171 official duties and responsibilities affecting the public. He was not removed from his place by the act of the judges, or by the appointment of another to perform his duties, and his continuance in the position, and his right to the emoluments, did not depend upon the action of the court, or of any other body, except as the judges had power to appoint him under the act of 1872.
After the passage of the act of 1872, there was no power or authority to continue him in the service of the court, except in pursuance of that act, and therefore there was no occasion to notify him of the fact that his connection with the court was terminated, when the court made appointments under that act.
Had the question been submitted to the jury, they might have found, that with knowledge of the fact, that his name was not on the pay-roll, he had some knowledge of the reason. But it is enough that his claim rests upon a statute, and an appointment under a statute repealed before the services were rendered, and that no notice to him was necessary to terminate his services.
The judgment should be reversed and a new trial granted.-
All concur.
Judgment reversed.